FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 AUG -4  AM 8: 36

LORETTA G. WHYTE
CLERK

# UNITED STATES  DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLARENCE T. SMITH | CIVIL ACTION |
| VERSUS | NO. 04-1789 |
| N. BURL CAIN, WARDEN | SECTION "K" (6) |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, and for the following reasons, it is HEREBY RECOMMENDED that petitioner's application for federal habeas corpus relief be DISMISSED WITH PREJUDICE.

## PROCEDURAL HISTORY

On May 11, 2000, petitioner, Clarence T. Smith, presently incarcerated in the Louisiana State Penitentiary located in Angola, Louisiana, was convicted, following trial by

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No._____

jury, of possession of cocaine.[1]  On June 15, 2000, petitioner was adjudicated to be a multiple offender and sentenced to life imprisonment.[2]  On May 30, 2001, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence. *State v. Smith*, 794 So.2d 41 (La. App. 5 Cir. 2001).[3]  Approximately one year later, on June 7, 2002, the Louisiana Supreme Court denied petitioner's writ application. *State v. Smith*, 817 So.2d 1145 (La. 2002).

In January, 2003, petitioner filed an application for post-conviction relief which the state trial court denied on February 3, 2003.[4]  On March 28, 2003, the Louisiana Fifth Circuit Court of Appeal, finding "no error in the trial court's ruling of February 3, 2003," likewise denied petitioner relief. *Smith v. Cain*, No. 03-KH-376 (La. App. 5 Cir. 2003) (unpublished opinion).[5]  Finally, on May 7, 2004, petitioner's writ application was denied by the Louisiana Supreme Court. *State ex rel. Smith v. State*, 872 So.2d 1070 (La. 2004).

---

[1]*See* State rec., vol. 1 of 3, p. 8.

[2]*See* State rec., vol. 1 of 3, p. 10.

[3]The Louisiana Fifth Circuit remanded the matter for the ministerial purposes of having the trial court "advise defendant of the provisions of LSA-C.Cr.P. art. 930.8" and "correct the commitment to reflect that the defendant was found guilty as charged by a jury." *Smith*, 794 So.2d at 45.

[4]A copy of the state trial court's Order denying petitioner's post-conviction application is attached to petitioner's federal habeas corpus application.

[5]A copy of the Louisiana Fifth Circuit's unpublished decision is contained in the State rec., vol. 2 of 3.

Petitioner filed the instant action for federal habeas corpus relief on May 27, 2004.[6]  In his habeas application, petitioner raises the following claims: 1) The trial court erred by finding probable cause based upon racial profiling; 2) the trial court erred by allowing into evidence inadmissible opinion testimony regarding petitioner's alleged involvement in a drug transaction; and, 3) he received ineffective assistance of counsel.  The State concedes that the instant action is timely and that petitioner, as required under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), has exhausted his state court remedies.[7]  Accordingly, the Court shall proceed to address the merits.

## FACTS[8]

On August 17, 1999, at approximately 8:00 p.m., Officers Donald Clogher and Philip DeSalvo of the Jefferson Parish Sheriff's Office observed a man, later identified as petitioner, straddling a bicycle, conversing with several females outside a known

---

[6]Under the "mailbox rule" employed by this Court, a pleading filed by a prisoner acting *pro se* is considered to be filed, for prescriptive purposes, on the date it is delivered to prison officials for mailing, rather than the date it is received by the court.  *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  If no evidence exists as to the date the petition was delivered to prison officials, the date the petitioner signed his habeas application is considered to be the filing date for purposes of determining the timeliness of the matter.  *See Colarte v. Leblanc*, 40 F.Supp.2d 816, 817 (E.D. La. 1999); *Magee v. Cain*, 2000 WL 1023423, *4 n.2 (E.D. La. 2000); *Punch v. State*, 1999 WL 562729, *2 n.3 (E.D. La. 1999).

[7]*See* Federal rec., doc. 6, State's Response at p. 3.

[8]The facts are based upon this Court's review of the trial transcript and the Louisiana Fifth Circuit's decision, *State v. Smith*, 794 So.2d 41 (La. App. 5 Cir. 2001).

3

"crackhouse".[9] During the course of this conversation, Officer Clogher observed "movement between their hands".[10]   Clogher testified that while he did not see "anything being transferred", their movements were "consistent" with past transactions which had "resulted in drug arrests."[11]

Having witnessed what he considered suspicious behavior, Officer Clogher drove toward the area where the conversation was taking place.  When petitioner saw the vehicle approaching, "he quickly jumped on his bike ... and quickly started pedaling [away] as fast as he could...."[12]  During the ensuing pursuit, petitioner began to "empty the contents of his pocket".[13]  Upon witnessing this, Clogher stopped the car and his partner, Officer DeSalvo, exited the vehicle and commenced retrieving the discarded items which later proved to be crack cocaine.  Clogher, meanwhile, continued his pursuit of petitioner, ultimately apprehending him with the assistance of Officer John Doyle.

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

---

[9]*See* State rec., vol. 1 of 3, p. 124, lines 17-19.

[10]*See* State rec., vol. 1 of 3, p. 87, lines 23-24.

[11]*See* State rec., vol. 1 of 3, p. 87, line 24 and p. 88, lines 3-5.

[12]*See* State rec., vol. 1 of 3, p. 89, lines 7-12.

[13]*See* State rec., vol. 1 of 3, p. 91, lines 4-8.

includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 1056, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Hill*, 210 F.3d at 485. Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it `was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485, *quoting* 28 U.S.C.§ 2254(d)(2).

## ANALYSIS

### A. Trial Court Erred by Finding Probable Cause Based Upon Racial Profiling

Petitioner argues that Officers Clogher and DeSalvo violated his Fourth Amendment rights because they lacked the requisite probable cause to justify their initial pursuit of petitioner and ultimate discovery of crack cocaine. According to petitioner, he was a victim of "racial profiling". He contends that Officers Clogher and DeSalvo decided to approach the area where he was conversing with several females not because they suspected illegal activity, but rather, because the participants of the pertinent conversation were black.

In its Response, the State asserts that the instant claim is barred from federal habeas corpus review because it was rejected by the state district court as a result of a state procedural bar.[14]   Specifically, the state district court, in its February 3, 2003 Order, determined: "The defendant's claim is an appealable issue and he is, thus, procedurally barred from raising this claim on post-conviction relief since he had the opportunity to do so on appeal. *State v. Gaines*, 97-1327 (La. App. 5 Cir. 2/9/99), 757 So.2d 110."[15]

The United States Fifth Circuit Court of Appeals has concisely set forth the standards to be used when analyzing whether a petitioner has procedurally defaulted with

---

[14] *See* Federal rec., doc. 6, State's Response at pp. 6-7.

[15] A copy of the state district court's February 3, 2003 Order is attached to petitioner's federal habeas corpus application.

6

respect to a particular claim, thereby barring federal habeas review:

> "A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground."

*Bell v. Cain*, 2002 WL 31002831, \*4 (E.D. La. 2002) (Africk,J.), *quoting Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).  "'When the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice.'" *Id.*, *quoting Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999).

It is well-established that a denial of relief based upon a petitioner's failure to raise the pertinent claim on direct appeal, as provided for under La.C.Cr.P. art. 930.4(C), "is a state procedural rule 'independent of the merits of the federal claim.'" *Id.*  As such, the next matter to be addressed is whether or not the state procedural rule is "adequate."

"The [procedural default or procedural bar] doctrine presumes that a state

procedural ground is adequate ... and, ordinarily, the burden is on the habeas petitioner to demonstrate otherwise." *Hughes*, 191 F.3d at 614. In order to establish that a state procedural default is not "adequate," the "petitioner bears the burden of showing that the state did not strictly or regularly follow [the] procedural bar...." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997).

*Bell*, 2002 WL at *4.

In this instance, petitioner makes no argument that the pertinent state procedural rule has not been strictly or regularly followed. Accordingly, the Court finds that the instant state procedural rule is "adequate." As such, federal habeas review of petitioner's claim is barred unless "'petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice.'" *Id.* at *5, *quoting Hughes*, 191 F.3d at 614.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original). Therefore, petitioner must show that some objective factor, external to the defense, prevented him or his defense counsel from raising the claim at issue in a procedurally proper manner. *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. *Id.*

*Bell*, 2002 WL at *5.

In this case, petitioner does not attempt to make the above-described showing.

8

Instead, petitioner argues that the state district court misconstrued his claim, erroneously determining that he was attacking the sufficiency of the evidence, rather than the admissibility of the evidence.[16]   As such, petitioner contends that his actual Fourth Amendment challenge should not be barred from federal habeas review.

The validity of the above argument is a matter this Court need not decide in light of the fact that petitioner's Fourth Amendment claim is precluded from federal habeas corpus review as a result of the United States Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).  In *Stone*, the United States Supreme Court held that a state petitioner is not entitled to federal habeas relief on the ground that trial evidence was obtained as a result of an unconstitutional investigation as long as the State provided "an opportunity for full and fair litigation" of petitioner's Fourth Amendment claim. *Id.* at 3052.  *See also Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986).  In this case, petitioner makes no allegation to the effect that he was denied an opportunity to challenge the admissibility of evidence based upon the argument that said evidence was obtained as a result of illegal actions on the part of Officers Clogher and DeSalvo in violation of his Fourth Amendment rights.  Accordingly, the instant claim is subject to dismissal.

---

[16]In its February 3, 2003 Order, the state district court described the pertinent claim as follows: "The defendant avers that the evidence used at trial to convict the defendant was insufficient, thus, violating his Constitutional protections." (A copy of the district court's Order is attached to petitioner's federal habeas corpus application.)

**B. Trial Court Erred by Allowing into Evidence Inadmissible Opinion Testimony Regarding Petitioner's Alleged Involvement in a Drug Transaction**

Petitioner claims that the trial court erred in allowing Officer Clogher to offer

the following testimony which he describes as "illegal inadmissable evidence".[17]

Q. Okay. And I want you to explain to the ladies and gentleman of the jury what it is that you saw, what you believed that you were seeing from your past experience.

A. Well, he was actually straddling his bicycle and he was facing the women and there was movement between their hands, although [I] couldn't see anything being transferred necessarily, but being where it was and the activity and their motions, their movements, their particular body movement as far as you know when they do it they look around, that type of thing, they seem concerned around them, it appeared as though it was an illicit transaction. Although there was nothing necessarily transacted it's common or at least from what we've seen in the past and have been known to be hand-to-hand drug transactions, it could be involving narcotics, it could have been a transfer of money for prostitution, but it was consistent with hand-to-hand transactions that have resulted in drug arrests.[18]

The State, in its Response, once again asserts that petitioner's claim is barred

from federal habeas corpus review because it was rejected by the state district court based

upon a state procedural rule. Specifically, the state district court provided:

---

[17]*See* Federal rec., doc. 1, petitioner's "Writ & Application for Habeas Corpus Relief" at p. 11.

[18]*See* State rec., vol. 1 of 3, p. 87, lines 18-32 and p. 88, lines 1-5.

The defendant further avers that the trial court erred by allowing inadmissible "opinionated evidence" to be used at trial relating to the defendant being engaged in a drug transaction. As in issue one, this claim is appealable and the defendant is now procedurally barred from raising the issue at this stage of his post-conviction proceedings. Therefore, this claim must also fail.[19]

As discussed earlier, a petitioner's federal habeas claim is considered to have been procedurally defaulted, and therefore, barred from federal habeas review, in a situation where the claim was rejected in state court proceedings pursuant to an independent and adequate state procedural rule. The state procedural rule used as the basis of dismissal in this instance, petitioner's failure to raise the matter on appeal, has been deemed both adequate and independent.[20]

Petitioner, in an attempt to overcome the above-described procedural default, argues that the prosecution, in connection with his state post-conviction proceedings, failed to raise the "defense" that his claim was barred under La.C.Cr.P. art. 930.4(C) due to his failure to raise the matter on direct appeal. As a result of this failure, petitioner contends that the prosecution has "forfeited its right to salvage a procedural bar defense."[21] In support of

---

[19]A copy of the state district court's February 3, 2003 Order is attached to petitioner's federal habeas corpus application.

[20]*See* discussion *supra* at pp. 6-8.

[21]*See* Federal rec., doc. 1, petitioner's "Writ & Application for Habeas Corpus Relief" at p. 12.

his argument, petitioner cites *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) and *Trest v. Cain*, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997). However, both of these cases involve the government's forfeiture of its federal procedural bar defense based upon its failure to raise this defense in its Response to a petitioner's federal habeas corpus application. The government does not forfeit such a defense as a result of its failure to raise a state procedural bar in connection with a petitioner's state post-conviction application. Accordingly, since petitioner has not demonstrated cause and prejudice in connection with his failure to raise his inadmissible evidence claim on direct appeal nor has he shown that a failure to address the claim on the merits will result in a fundamental miscarriage of justice, said claim is procedurally barred from federal review.

## C. Ineffective Assistance of Counsel

The seminal Supreme Court decision regarding ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), wherein the Court held that in order to prove that counsel was unconstitutionally ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the *Strickland* test, "it is necessary

to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed. 2d 180 (1993), *citing Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. To prove prejudice under the *Strickland* standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Petitioner contends that his counsel was ineffective due to his failure to call Harold Lee as a witness at trial and his failure to locate the females with whom petitioner was speaking at the time Officers Clogher and DeSalvo arrived on the scene. Petitioner claims that Harold Lee, along with the unidentified females, were eyewitnesses who "could have offered testimony to refute the State's case."[22] Petitioner, however, fails to specify the testimony these witnesses allegedly would have provided had they been called.

The failure to contact or call witnesses is not *per se* prejudicial to the point of warranting habeas relief. *See Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("complaints of uncalled witnesses are not favored [in federal habeas review] because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative"). In *Alexander v. McCotter*, 775

_____

[22] *See* Federal rec., doc. 1, petitioner's "Writ & Application for Habeas Corpus Relief" at p. 16.

13

F.2d 595, 602 (5th Cir. 1985), the Fifth Circuit noted that for a petitioner to show prejudice under *Strickland*, he must show that the testimony of the witnesses would have been favorable and that the witnesses would have testified at trial.   Petitioner must show a reasonable probability that the uncalled witnesses would have made a difference in the result. *Alexander*, 775 F.2d at 603.   There is a strong presumption that the failure of petitioner's counsel to call witnesses is a strategic choice. *Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66 (1984).

In this case, petitioner, who has failed to provide this Court with even a glimpse as to what these alleged witnesses would have stated had they been called to testify at trial, has clearly failed to satisfy his burden of proof.   Accordingly, the instant claim is without merit.

Petitioner next alleges that counsel was ineffective as a result of his failure to object "to the State's solicitation of inadmissible, opinionated prejudicial testimony."[23] However, other than the fact that the alleged objectionable testimony was not favorable to the defense, petitioner sets forth no basis upon which an alleged objection could have been lodged.   It is well-established that counsel, for purposes of overcoming an ineffectiveness

---

[23] *See* Federal rec., doc. 1, petitioner's "Writ & Application for Habeas Corpus Relief" at p. 18.   Though petitioner fails to specify the precise testimony to which counsel should have objected, he is presumably referring to the above-referenced testimony of Officer Clogher which he similarly described as "inadmissible opinionated evidence".   *See* discussion *supra* at p. 10.

claim, are "not required to make futile motions or objections." *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990), *citing Murray v. Maggio,* 736 F.2d 279, 283 (5th Cir.1984) (*per curiam*).

Petitioner also claims that due to the fact that "numerous hands" came into contact with the "suspected substance", i.e., the crack cocaine, "counsel should have challenged the chain of custody of said evidence." According to petitioner, "counsel's deficient performance" in failing to challenge the "chain of custody", prejudiced him since it resulted in the unconstitutional admission of "contaminated evidence."[24] For the following reasons, petitioner's argument is without merit.

First, a "chain of custody argument", such as the one set forth above, "presents a question of [s]tate evidentiary law that generally is not amenable to habeas review." *Gonzalez-Pena v. Herbert,* 369 F.Supp.2d 376, 387 (W.D.N.Y. 2005), *citing Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Second, an alleged gap in the chain of custody goes to the weight of the evidence, not its admissibility. *Herbert,* 369 F.Supp.2d at 387, *citing Cassell v. Ricks,* 2000 WL 1010977, *7 (S.D.N.Y. 2000), *citing, e.g., United States v. Hon,* 904 F.2d 803, 810 (2nd Cir. 1990) ("Once the exhibits were admitted into evidence, the alleged defects in the government's chain of

---

[24] *See* Federal rec., doc. 1, petitioner's "Writ & Application for Habeas Corpus Relief" at pp. 19-20.

custody proof were for the jury to evaluate in its consideration of the weight to be given to
the evidence."). Third, an examination of the pertinent testimony reflects that a challenge
to the chain of custody would have been futile.

Jefferson Parish Sheriff Deputy Philip DeSalvo, with respect to the
circumstances under which the evidence first came into the possession of Jefferson Parish
officials, testified as follows:

> Q.  Now, when you approached to where you indicated [petitioner] was
> dropping these objects, what type of area was he dropping it on?  Was it the
> street, the sidewalk, grass –
>
> A.  On the concrete, regular concrete.
>
> Q.  Okay.  When you asked your partner to let you out did you focus on the
> objects that were being dropped?
>
> A.  Yes.
>
> Q.  And, did you get out at that exact point?
>
> A.  Yes.
>
> Q.  And, were you able to retrieve what it was that he was dropping at that
> specific location?
>
> A.  Yes, I was.

Q. At that point in time were you able to in fact retrieve what was dropped?

A. Yes, sir.

Q. And I'm going to show you what has been previously marked as State Exhibit Number-1. - -

Your Honor, may I approach the witness?

THE COURT:

Yes, you may.

Q. I'm going to show you that, Officer.  Do you recognize those objects? (Handing the exhibit to the witness)

A. Yes, I do.

Q. Okay. And I'm going to call your attention specifically to the item number and the date on the evidence tag.  First, is that the same Jefferson Parish Sheriff's Office item number that this incident was reported under?

A. Yes, sir.

Q. The same Jefferson Parish Sheriff's Office number that this evidence was received under?

A. Yes, sir.

Q. Okay.  And it's got the name of Agent Pierson.  Who's Agent Pierson?

A. He works with our narcotics division.  That is the actual agent that I turned

over the narcotics to.

Q. You personally?

A. Yes.

Q. Okay. It's got the date 8-18-99. Why is that [when it was 8-17-99 when you initially observed the suspect]?

A. Because it was two o'clock in the morning at the time I turned [the evidence] over to [Agent Pierson].

Q. Okay. Is there any doubt in your mind that this is what was discarded by the person that y'all were chasing?

A. No, sir.

Q. After you retrieved these rocks was anything else in the street that could have been construed as litter or gravel or anything you could have got[ten] this mixed up with?

A. No, sir.[25]

Edgar Dunne, a forensic chemist who was qualified as an expert "in the field of isolation and identification of controlled dangerous substances",[26] offered, on cross-examination, the following with respect to what happened to the evidence after it left Officer DeSalvo's

---

[25]*See* State rec., vol. 1 of 3, p. 126, lines 18-32 and p. 127, lines 1-32 and p. 128, lines 1-6.

[26]*See* State rec., vol. 1 of 3, p. 74, lines 16-25.

possession.

Q. All right, let's talk about where these drugs went. When were these drugs received by your lab?

A. They were received on August 20th, 1999 at 9:30 a.m.

Q. August the 20th?

A. That's correct.

Q. From whom?

A. I cannot make out the signature, but it was somebody from narcotics who delivered the evidence to the laboratory. It was received by our evidence technician, Mrs. Pasalagua on that date.

Q. What was done with those specimens between August the 20th and the time the test was done? By the way, what time of day was the test done? Was it done on October the 5th?

A. That's correct.

Q. That's the date on the bottom of this form, State's Exhibit Number-2.

A. That's correct.

Q. Okay. Where was it in the meantime?

A. The evidence technician put the lab number on it and also her initials. She

also placed it in a large holding safe on the third floor of the Eastbank Lockup, where it remained until September the 30th when it was removed and turned over to me.

Q. Okay.  Since then did you mark those specimens in any way to determine that they're still the same specimens that you examined on October 5th?

A. I did.  Four of them bear my initials in red ink.

Q. And, did you put those initials on there yourself?

A. Correct.

Q. All right.  But you have no idea where that cocaine was between August the 17th and August the 20th; is that correct?

A. I have no idea at all.[27]

Based upon the chain of custody established via the above testimony, the Court finds that a reasonable jury clearly could have concluded that the evidence recovered from petitioner on August 17, 1999 by Officer Philip DeSalvo was the same evidence tested and determined to be crack cocaine on October 5, 1999 by forensic chemist Edgar Dunne.[28]

---

[27]*See* State rec., vol. 1 of 3, p. 78, lines 20-32 and p. 79, lines 1-22.

[28]The reasonableness of the jury's finding is apparent despite a two-day gap, from August 18th, when the evidence left Officer DeSalvo's possession, to August 20th, when it arrived in Dunne's lab. *See generally United States v.* Aviles, 623 F.2d 1192, 1198 (7th Cir. 1980) ("[T]he government need not exclude all possibilities of tampering with evidence in order to establish a sufficient chain of custody. *United States v. Bridges*, 499 F.2d 179, 185 (7th Cir.), *cert. denied*, 419

Accordingly, the instant claim is without merit.

In addition to the above trial errors, petitioner complains that counsel, Guy Lillian, was unconstitutionally ineffective in connection with his June 15, 2000 multiple offender hearing. At this hearing, the State, via the submission of matching fingerprint evidence, proved that in addition to his May, 2000 conviction for possession of cocaine, petitioner had three prior convictions. Specifically, the State offered the following:

> Judge, at this time the State of Louisiana is going to offer, file and introduce into evidence State's Exhibit-1 In Globo, the two fingerprint cards taken in court today by Captain Boling [witness accepted as an expert in the taking and identification of fingerprints]. State's Exhibit-2 In Globo, which is a certified copy of a bill of information in Case Number 91-61, Division L of the Twenty-Fourth Judicial District Court, a bill of information charging the defendant with first degree murder upon engaging in the perpetration of an aggravated burglary. The record will so reflect that the case on the defendant was amended to charge him with accessory after the fact to manslaughter. There is in connection with that *Boykin* form, also the committment [sic] of hard labor/plea sentencing form, as well as the Jefferson Parish Sheriff's Office arrest register showing what the defendant was initially arrested for, along with item numbers which match the item numbers on the bill of information as well as the date of offense, and the fingerprints as testified to by Captain Boling. State's Exhibit-3 In Globo, which is a certified copy of a bill of information in Case Number 91-523 out of Division L of the Twenty-Fourth Judicial District Court, with a bill of information, the back of it having fingerprints of Clarence T. Smith taken on October 1, 1991, as testified to by Captain Boling; also, a plea of guilty form as well as a hard labor committment [sic] form and a Jefferson Parish arrest register where the item number as well as the date of incident match the same bill of information, and the fingerprints that Captain Boling testified to as being made by one and the same person. And, State's Exhibit-4 In Globo, a certified copy of a bill of information in

U.S. 1010, 95 S.Ct. 330, 42 L.Ed.2d 284 (1974).").

Case Number 84-1148 of Section J or Division J of Twenty-Fourth Judicial District Court which shows that the defendant in fact was initially charged with four (4) counts of armed robbery and the defendant ultimately pled guilty to simple robbery in this case. There is a sentencing form, certified copy, also a bill of information, a waiver of constitutional rights/plea form, a committment [sic] form, and Jefferson Parish Sheriff's Office arrest registers which correspond to all item numbers and dates of offense and the fingerprints on the back of said arrest registers, as testified to by Captain Boling, matching those along with State's Exhibit-1. At this time the State would offer, file and introduce into evidence State's Exhibits-1 through 4 In Globo.[29]

Petitioner's counsel raised an objection to State Exhibit-4 In Globo, claiming that the plea form did not bear petitioner's signature. The state district court, however, overruled counsel's objection based upon the fact that defendant bore "the burden of disproving the authenticity of the guilty plea form."[30]

Petitioner, in his federal habeas application, states that he "totally agrees with the district court", acknowledging that "defense counsel [bore] the burden of challenging the guilty plea form." According to petitioner, it is the fact that counsel was "unfamilar [sic]" with applicable state law placing the burden of proof on the defense which rendered counsel's representation ineffective.[31] Petitioner argues that if counsel had properly known

---

[29]*See* State rec., vol. 1 of 3, p. 189, lines 15-32 and p. 190, lines 1-32 and p. 191, lines 1-11.

[30]*See* Federal rec., doc. 1, petitioner's "Writ & Application for Habeas Corpus Relief" at p. 22. *See also* State rec., vol. 1 of 3, p. 193, lines 12-15.

[31]*See* Federal rec., doc. 1, petitioner's Writ & Application for Habeas Corpus Relief" at p. 22.

22

he had the burden of proof and met his burden, then evidence which ultimately led to petitioner receiving a life sentence would have been excluded.

Petitioner, in connection with his state post-conviction application, raised this same issue which the state district court reiterated as follows:

> The defendant avers that a guilty plea form was offered into evidence by the State at the defendant's sentencing hearing. The defendant further avers that his attorney did not meet his burden of disproving that the defendant did not sign the guilty plea and waiver of rights form. The defendant contends that his counsel's failute [sic] to keep the form from being admitted by the State enabled the State to successfully have the defendant sentenced to life in prison.[32]

The state court then proceeded to reject petitioner's claim due to his failure to satisfy the requirements of *Strickland*. Specifically, the court stated:

> Once again, the defendant is bound by the standard as established in *Strickland v. Washington*, 466 U.S. 668 (1984) regarding his claim of ineffective assistance of counsel. It is impossible to determine in hindsight whether another counsel would have been able to prevail in a situation such as the defendant's counsel. **The defendant does not show that his counsel acted in any way deficient** [emphasis added].

Similarly, in his federal habeas application, petitioner offers no argument as to how counsel could have met his burden of proof and prevented the pertinent document from coming into evidence and being used to support his multiple offender adjudication and

---

[32] A copy of the state district court's decision is attached to petitioner's federal habeas corpus application.

corresponding life sentence.  Accordingly, petitioner's claim is without merit.

Petitioner also argues that appellate counsel was ineffective for failing to preserve trial counsel's objection to his habitual offender adjudication based upon the lack of petitioner's signature on the plea form which was entered into evidence as State's Exhibit-4 In Globo.  However, once again, by virtue of petitioner's failure to show how counsel's preservation of said objection could possibly have been successful, he has failed to satisfy his burden of proof under *Strickland, supra.*[33]

Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Clarence T. Smith, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

---

[33] *Strickland's* two-part test is applicable with respect to a claim that appellate counsel was unconstitutionally ineffective. *See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir.), *cert. denied*, 541 U.S. 1087, 124 S.Ct. 2812, 159 L.Ed.2d 249 (2004) (*citations omitted*) ("The familiar *Strickland* framework applies to a prisoner's claim that his appellate counsel was ineffective for failing to raise a certain issue on appeal.").

accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 3RD day of August , 2005.

LOUIS MOORE, JR.
United States Magistrate Judge

25